259 So.2d 200 (1972)
James L. BARKER, Appellant,
v.
STATE of Florida, Appellee.
Nos. 71-108, 71-109.
District Court of Appeal of Florida, Second District.
March 17, 1972.
*201 Robert Douglas and Larry D. Goldstein of Brown, Ruiz, Watson & Goldstein, St. Petersburg, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Warren H. Petersen, Asst. Atty. Gen., Tampa, for appellee.
McNULTY, Judge.
Appellant changed his plea from not guilty to guilty on two charges of obtaining property in return for worthless checks. His sole point on appeal is that he changed his plea to guilty because the trial judge indicated that he would be granted probation. Instead, he was sentenced to two consecutive terms of five years each in the state penitentiary. He now seeks enforcement of his "bargain" for probation.
Peculiarly, appellant did not, and does not now, seek to withdraw his guilty plea pursuant to Rule 1.170(f), RCrP, 33 F.S.A., and consequently does not really attack the judgment herein. He merely attacks the validity of the sentence. In this respect the case differs from the recent Brown v. State[1] in which, after a prison sentence was imposed, the defendant sought to withdraw his guilty plea because he and his counsel "honestly misunderstood" pre-plea comments of the trial judge which led them to believe the accused would receive probation if such guilty plea were entered. The supreme court held that withdrawal of the plea should have been allowed under those circumstances. Here, however, we sail a slightly different course and now find ourselves more involved in the delicate and narrower area of "plea bargaining" or "plea discussion" which, though a venerable *202 practice, has only recently attained widespread respectability.[2]
At the outset, we take this opportunity to acknowledge that such plea discussions have become an absolute necessity in the administration of criminal justice and that they should be sanctioned.[3] It remains only to be decided in each case whether justice has been subserved thereby and, at the same time, whether time honored fears of injustice have been alleviated. These fears concern themselves, of course, with the danger of corrupt influences exerting pressures on law enforcement officials, with whether innocent persons may be influenced to plead guilty for fear of harsher sanctions, with whether, even in the case of a guilty person, his plea is "voluntary" in fact, and finally, with whether society is getting its full and just measure of redress.[4] By giving formal recognition to plea discussion, however, and thereby giving rise to more frequent routine appellate review, much if not all of the fear and uncertainty regarding plea discussions will be obviated by a growing body of law. Additionally, there will be ever increasing implementation of safeguards tending to insulate the administration of criminal justice from realization of such fears.
Notwithstanding their recently acquired mantle of propriety, however, there has been much concern and debate about the trial judge's role in these plea discussions; and the facts of this case bring, we think, some of the inherent problems more clearly into focus. Appellant had originally entered a plea of not guilty to the charges herein. Some considerable time thereafter it appears that his counsel had a discussion with the trial judge in chambers. The record doesn't reveal whether counsel for the state was present, but apparently the appellant himself was not. Later, in open court, counsel for appellant indicated that appellant would change his plea to guilty. The court then conducted a voir dire examination of appellant directed toward a determination of the voluntary, advised, intelligent, knowing and understanding nature of the plea, after which the court said:
"THE COURT: Mr. Barker, of course, I talked with your lawyer with respect to your case before your coming in here to change your plea to guilty. I have gone into your past record with him in this case, and I understand you served eighteen months in the State prison for a similar charge once before. Is that right?
MR. BARKER: Yes, sir."
There was some discussion thereafter relating to some other difficulties, minor in nature, which appellant had had when he employed minors to solicit sales and had not seen to it that they were properly licensed or had work permits. This latter discussion ended as follows:
"THE COURT: All right. Now, based upon these facts that you have just confirmed  I told Mr. Goldstein [appellant's counsel] whether you went to trial before me and were found guilty or whether you plead guilty would not make any difference; I thought the best thing would be to put you on probation. Did he tell you that?
MR. BARKER: He says I could if I was found guilty.
THE COURT: Did he tell you I told him I would put you on probation?
MR. BARKER: No, sir.
THE COURT: Did he say `yes,' or `no?'

*203 MR. BARKER: I told him if  I didn't understand the question. He told me if what I said was true and these were the facts involved 
THE COURT: He actually said whether you went to trial or plead guilty, either way?
MR. BARKER: Yes, sir."
The court thereupon then found the guilty plea to be voluntarily, advisedly and intelligently entered and accepted such plea. He then concluded that arraignment session as follows:
"THE COURT: And I am going to order a pre-sentence investigation and report, and do so order pre-sentence investigation and report from the Florida Probation and Parole Division.

Assuming nothing shows up to the contrary of what we heard, I will put you on probation for three years. I will wait until we have that report.
Anything else you want to tell me at this time? Anything bad you think might come out?
MR. BARKER: No, sir... .
* * * * * *
THE COURT: From what I have heard, it is probably in the best interest of everybody you have the assistance of probation. Maybe they can keep you out of these scrapes."
Some two months later at sentencing, and with little if any preliminary fanfare, the court quickly made known that he had changed his mind about probation. He referred to appellant as a "con man" and alluded to his occupation or practice of using minors to solicit sales of whatever articles were involved. At no time, however, did the court indicate that he thought such occupation was illegal; nor does the record reflect that it is in fact illegal or was conducted in an illegal manner, except, of course, for the reference to appellant's neglecting to secure licenses or permits for the minors involved as had been discussed at the plea change. Moreover, the record does not reveal whether between such plea change and sentencing appellant had continued to be neglectful in this latter respect, nor did the court make a finding thereof. In short, no "new matters" came to light during the pre-sentence investigation, and any matters referred to by the trial judge at sentencing were really an elaboration of the matters discussed with him at the plea change and about which he had made inquiry. Furthermore, we cannot find any basis in the record for a conclusion that these matters, or the circumstances of their coming to light, constituted trickery or a "fraud upon the court" at the time of the plea change, nor can it be said that the totality of circumstances amounted to an inducement to the trial judge to indicate leniency. As a matter of fact it appears from the record that the matter of leniency may well have been first injected into the proceedings by the trial judge himself.
It should be clear now why we earlier categorized plea discussions, particularly when the trial judge is involved, as "delicate." Indeed, it has been said that there are a number of valid reasons for keeping the trial judge out of plea discussions entirely. Among these are (1) that judicial participation in such discussions can create the fear in the mind of the defendant that he would not receive a fair trial were he ultimately to go to trial before that judge; (2) that judicial participation in these discussions makes it difficult for the judge objectively to determine the voluntariness of an offered guilty plea; and (3) that fear of harsher sanctions may induce an innocent person to plead guilty in order to show willingness to abide by the more lenient disposition apparently acceptable to the judge if a guilty plea is entered.[5] Consequently, in promulgating the Standards for *204 Criminal Justice[6] the American Bar Association approved the majority view of its advisory committee on the matter and expressly concluded that the trial judge should not participate in plea discussions until after a tentative plea agreement has been entered into between counsel for the prosecution and counsel for the defendant.[7]
With full cognizance of the foregoing concerns, however, we hesitate to fully concur that a judge should not participate in the original plea bargaining discussions or, for that matter, that he should not initiate them. Certainly, of course, if such discussions involve charge concessions, i.e., the dismissal of some charges in return for a plea of guilty on others, or the reduction of a charge to some lesser included charge, the concurrence of the prosecuting attorney is essential. On the other hand, if it is merely a sentence concession, i.e., relating to a sentence less than the maximum, or to probation in the alternative, or to concurrent sentences in lieu of consecutive sentences, the prosecuting attorney's concurrence is not essential though unquestionably desirable. In any case, the pressures of crowded trial dockets, the desire for speedy and efficient disposition of criminal cases, knowledge of lenient parole practices of the Florida Parole Commission which may result in early parole however long the prison term and other practical considerations may operate to persuade a trial judge that justice and expediency would best be served by his participation in or initiation of plea bargaining discussions. Indeed, we more than suspect that in practice this may well be the rule rather than the exception, particularly in the larger and more urban areas. So we do not now condemn that practice per se, fully anticipating that trial judges will most certainly take all precautions to avoid realization of the fears and concerns discussed earlier.
We interpose to say here though, and we emphasize, that we are in full accord with the view that an indication of leniency on the part of the trial judge is not binding upon him,[8] even if it be said to have been the sole inducement in procuring a guilty plea (assuming such plea is otherwise voluntary). In the absence of a clear showing of irrevocable prejudice to either the prosecution[9] or defense we are reluctant to extend the status of a "plea bargain" to that of a specifically enforceable contract since appropriate relief may ordinarily be afforded otherwise.[10] That is to say, if a trial judge later decides that final disposition of the case should not include the concession of leniency contemplated by a prior plea discussion he should be most liberal in permitting a withdrawal of a guilty plea resulting therefrom.[11] If he does so it is likely that the parties would be returned substantially to the same position that they were in to begin with and before the plea change.[12]
We come now to the problem before us, i.e., charting the best procedural course to *205 pursue if and when, notwithstanding a plea bargain which the judge participated in or tentatively approved, he ultimately decides not to include the concessions or leniency contemplated by such bargain in his final disposition of the case. As to this, generally, we cite with approval § 3.3(b) of the A.B.A. Standards[13] which provides in pertinent part:
"(b) If a tentative plea agreement has been reached which contemplates entry of a plea of guilty ..., upon request of the parties the trial judge may permit the disclosure to him of the tentative agreement... . If the trial judge concurs, but later decides that the final disposition should not include the charge or sentence concessions contemplated by the plea agreement, he shall so advise the defendant and then call upon the defendant to either affirm or withdraw his plea of guilty or nolo contendere." (Italics supplied)
Now we realize that this provision assumes an "agreement" between counsel which is concurred in by the court, and we may concede in this case that the language of the quoted colloquy does not support an "agreement" between counsel or, arguendo, with the judge in the sense of finding a specific quid pro quo. But certainly appellant and his counsel could have reasonably expected, indeed anticipated, leniency. Further, no one can seriously doubt but that appellant was strongly persuaded to change his plea in reliance on that expectancy even though it must be said that such inducement under the circumstances was insufficient to fatally contaminate the voluntariness of such plea. We conclude, therefore, that even though the foregoing portion of the Standards contemplates an "agreement" as such, the prescribed procedure therein in nevertheless equally appropriate under the facts of this case here.
The trial judge here did not follow that procedure. But we repeat, appellant did not then, nor does he now, seek to withdraw his plea notwithstanding, although he could have under Rule 1.170(f), RCrP, and as noted in Brown v. State, supra.[14] Perhaps he was ill-advised in the premises, but the fact remains he seeks only to enforce the bargain. In any case, we reiterate that we are reluctant to specifically enforce plea bargains, particularly as they may involve or bind the trial judge; and there are no extenuating circumstances shown here which compel our mandating an exception to such a rule.
Nevertheless, we conclude that the interests of justice and the appropriate recognition of the duties incumbent upon trial judges, as they pertain to promises or indications of leniency made in negotiating or discussing the entry of pleas of guilty, will best be served in this case by vacating the judgment and sentence herein and remanding the cause for further proceedings. We hold, in this regard, that if a trial judge concurs in a plea bargain, or enters into a plea discussion which contemplates sentence or charge concessions and which culminates in a guilty plea as a result thereof, but he later decides that final disposition should not include such concessions as may be contemplated in the bargain or discussion, it is his affirmative duty to so advise the defendant before sentencing and to call upon the defendant to either affirm or withdraw his plea entered as a result of the contemplated concessions. We so hold under the assumption, of course, that there was no trickery or fraud perpetuated by the defendant to induce such sentence or charge concessions and that no new matters turn up at sentencing which were not contemplated in the plea discussions.
Accordingly, the judgment and sentence are vacated and the cause is remanded for further proceedings not inconsistent herewith.
Reversed and remanded.
LILES, A.C.J., and HOBSON, J., concur.
NOTES
[1] (Fla. 1971), 245 So.2d 41.
[2] See, e.g., Santobello v. New York (1971) 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427; and Sections 3.1, et seq., A.B.A. Standards for Criminal Justice Relating to Guilty Pleas (Approved Draft, 1968). Cf., also, Brown v. State, n. 1, supra.
[3] Id.
[4] See, Commentary, Sections 3.1, et seq., A.B.A. Standards, id.
[5] See, e.g., Note, 112 U.Pa.L.Rev. 865, 891-92 (1964); and Commentary, Section 3.3(a), A.B.A. Standards id.
[6] See, A.B.A. Standards, id.
[7] See, Section 3.3, id.
[8] See, e.g., Brown v. State, n. 1, supra, p. 44.
[9] See, n. 11, infra.
[10] But compare, Santobello v. New York, n. 2, supra, re: the possibility of specifically enforcing a plea bargain as against the prosecuting attorney when it is his concessions which have been rescinded.
[11] See, Rule 1.170(f), F.R.Cr.P., and Brown v. State, n. 1, supra.
[12] Conceivably, however, either of the parties may have suffered irrevocable prejudice. We consider, as an example, the possibility of a plea bargain and resultant guilty plea on the day of trial when all parties are ready, willing and able to go forth. If a substantial delay in the trial results because the judge ultimately changes his mind on concessions contemplated by the plea bargain, justice may compel a denial of a motion to withdraw a guilty plea voluntarily entered if, in the intervening time period, an essential prosecution witness dies or otherwise becomes permanently unavailable. Similarly, if the accused is prejudiced in like manner, justice may compel enforcement of the "bargain."
[13] See, n. 2, supra.
[14] See, n. 1, supra.