500 So.2d 256 (1986)
Joseph MACKER, Appellant,
v.
The STATE of Florida, Appellee.
No. 85-2687.
District Court of Appeal of Florida, Third District.
December 16, 1986.
Rehearing Denied February 3, 1987.
*257 Harvey S. Swickle, North Miami Beach, for appellant.
Jim Smith, Atty. Gen., and Susan Odzer Hugentugler, Asst. Atty. Gen., for appellee.
Before HENDRY, NESBITT and PEARSON, DANIEL S., JJ.
NESBITT, Judge.
Macker appeals from the trial court's denial of his motion for post conviction relief, filed pursuant to Florida Rule of Criminal Procedure 3.850. He contends that the state's failure to abide by the plea agreement, entered into by both parties, negates the voluntary nature of his guilty pleas and that the pleas ought to be vacated. We agree and reverse.
The facts of this case are undisputed. Macker agreed to plead guilty to four counts each of second-degree murder, kidnapping and armed robbery, for which he received concurrent life sentences. He also agreed to plead guilty to one charge of possession of a controlled substance and was sentenced to fifteen years to run concurrently with the life sentences. As part of the bargain, Macker agreed to cooperate with the state in the prosecution of his codefendants.
In return for the guilty pleas and Macker's cooperation, the state agreed to try to arrange Macker's sentence so that he could serve most of his time in a federal facility. The state also agreed to inform the parole commission of the plea agreement and the full extent of Macker's cooperation. The agreement itself required that all of the provisions were to be carried out in good faith and proof that good faith was not used was to be grounds for vacating the plea agreement.
The record demonstrates that Macker fulfilled his part of the bargain and continues to do so by cooperating with the state in its ongoing prosecutions. The state, however, failed to uphold its portion of the agreement. The assistant state attorney, when contacted by a post sentence investigator for the parole commission, stated that it was his opinion that Macker was a "very nasty individual" who deserved to spend the rest of his life in prison. Though the assistant state attorney maintains that this was an off-the-record statement, the post sentence report contains these remarks but says nothing of Macker's cooperation or the plea agreement.
The parole commission considered the post sentence investigation report in setting Macker's presumptive parole release date in 2026. The commission reduced the parole date by twelve months the following year due to Macker's "program involvement and adjustment."
Macker filed his motion for post conviction relief after learning of the state's breach, contending that his plea was not voluntary, since he would not have entered *258 it had he known the state would renege on its promise. It was only after Macker filed his Rule 3.850 motion that the state attorney's office contacted the parole commission in an attempt to remedy the breach. The parole commission reduced Macker's parole date to 2007 upon learning of the agreement.
The trial court held a hearing on Macker's motion. Afterwards, the trial court stated: "the court is not prepared to find that there has been a specific performance [of the terms of the agreement by the state], although the court does find that at this point in time there is no prejudice to the defendant." The trial court denied Macker's motion, but ordered specific performance by the state. Macker then brought this appeal.
A prosecutor is held to meticulous standards of both promise and performance in plea agreements. Correale v. United States, 479 F.2d 944 (1st Cir.1973). This is because when a defendant pleads guilty he waives his fundamental rights to confront his accusers, to present witnesses in his defense, to remain silent, and to be convicted by proof of guilt beyond all reasonable doubt. Santobello v. New York, 404 U.S. 257, 264, 92 S.Ct. 495, 500, 30 L.Ed.2d 427 (1971) (Justice Douglas concurring); see also United States v. Bowler, 585 F.2d 851 (7th Cir.1978); Correale, 479 F.2d at 947.
The plea agreement required the state to inform the parole board of Macker's cooperation and of the nature of the agreement; this was to be carried out in good faith. Implicit in this agreement was the notion that the state would not relay any information which might hinder Macker's chances for receiving an early parole date. The fact that the assistant state attorney's response to the post sentence investigator's question was inadvertent does not, as the state contends, justify the breach of good faith as required by the plea agreement; nor does it lessen its impact. See Santobello, 404 U.S. at 262, 92 S.Ct. at 498. There being evidence of lack of good faith on the part of the state, we find that the state has failed to perform this agreement as required.
The state argues that the alleged breach was subsequently remedied by the state's further contact with the parole board. Macker responds that there is no way of determining whether the latest reduction in the parole date is free of the original taint of the state's breach. We find, however, that it does not matter whether the breach was subsequently remedied, or even if the breach had no prejudicial effect.
The reason is obvious; it is the defendant's rights which are being violated when the plea agreement is broken or meaningless. It is his waiver which must be voluntary and knowing. He offers that waiver not in exchange for the actual sentence or impact on the judge, but for the prosecutor's statements in court. If they are not adequate, the waiver is ineffective.
Correale, 479 F.2d at 949. See also Cohen v. United States, 593 F.2d 766, 772 (6th Cir.1979) ("As the touchstone of Santobello is whether the prosecution met its commitment and not whether the court would have adopted the government's recommendation, it necessarily follows that in this case the Parole Board's awareness of and/or disinclination to adopt the terms and conditions of the plea agreements would be irrelevant." (citations omitted)); Vetter v. State, 425 So.2d 575 (Fla. 2d DCA 1982). Thus, the state's breach of the plea agreement removes the legal basis for the plea, see Petition of Geisser, 554 F.2d 698, 704 (5th Cir.1977), and entitles Macker to relief. Moreover, it cannot be said that Macker's constitutional expectancy has been fulfilled by the state's belated attempt to correct its prior breach, since nothing short of full compliance will suffice.
The withdrawal of a plea ought to be allowed where justice and fairness require it. United States v. Swinehart, 614 F.2d 853 (3d Cir.), cert. denied, 449 U.S. 827, 101 S.Ct. 90, 66 L.Ed.2d 30 (1980). The United States Supreme Court has recommended that when the state has breached a plea agreement, the trial court should order either specific performance of the agreement *259 or allow the defendant to withdraw his plea. Santobello, 404 U.S. at 263, 92 S.Ct. at 499. Florida law permits a defendant to withdraw his plea after the state breaches a plea agreement. Lollar v. State, 443 So.2d 1079 (Fla. 2d DCA 1984). In this case, we find that fairness and justice require that we reverse the trial court's order and remand with directions to the trial court to vacate Macker's guilty pleas. The parties will then be placed in the position in which they stood prior to the plea agreement and Macker will answer anew to all of the charges in the original indictment.
The United States Supreme Court, in Santobello, recognized that plea negotiations are an "essential component of the administration of justice," in order to maintain the efficiency of the process, reduce the impact of pretrial confinement and the danger of pretrial release, and to enhance "the rehabilitative prospects of the guilty when they are ultimately imprisoned." Santobello, 404 U.S. at 260, 261, 92 S.Ct. at 497, 498 (citation omitted). This case should, therefore, serve as a reminder to state attorneys "that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled," 404 U.S. at 262, 92 S.Ct. at 498 (emphasis added), because the Constitution demands it and the administration of justice demands it. We caution state attorneys that they bear the ultimate responsibility of ensuring compliance with the plea agreements that their offices enter into and to that end they should seek to train and educate their assistants so that unfortunate incidents such as this do not recur.
Accordingly, the order under review is reversed with directions as expressed herein.
HENDRY, J., concurs.
DANIEL PEARSON, Judge, concurring.
I, too, would reverse the order under review. However, unlike the majority, I would give the State the opportunity to prove that its inadvertent breach of the plea agreement brought no harm to the defendant, that is, that the parole commission, in changing the defendant's scheduled parole release date to the year 2007, totally erased from its consideration the adverse remarks of the assistant state attorney. I would require the State to prove this lack of taint beyond a reasonable doubt.
If, indeed, it is shown by that quantum of proof that no harm has come to the defendant, I see no reason why, more than six years after his plea was entered, the defendant should be permitted to withdraw it and perhaps thereby become an undeserving beneficiary in a case which may have become severely weakened with age.